# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- x
Boiling Crab Franchise Co., LLC,                             :
                    Plaintiff,   :  Case No.:  6:25-cv-1626 (AMN/ML)
                           :  **COMPLAINT**
      - against -                                :
                           :  **JURY TRIAL DEMANDED**
The Boiling Seafood LLC,                                     :
                    Defendant.   :
------------------------------------------------------------- x

Plaintiff Boiling Crab Franchise Co., LLC ("Plaintiff") brings this complaint against Defendant The Boiling Seafood LLC ("Defendant"), and alleges as follows:

## PRELIMINARY STATEMENT

1.  Since 2004, consumers have relied on Plaintiff's strong and inherently distinctive THE BOILING CRAB® trademarks to identify Plaintiff's iconic and critically-acclaimed restaurants. Plaintiff's THE BOILING CRAB® marks, as well as its inherently distinctive EAT WITH YOUR HANDS™ trademark, embody a sterling reputation for industry-leading Cajun-influenced, Louisiana-style seafood that extends nationwide due to the consistently high quality cuisine and services offered at THE BOILING CRAB® restaurants, Plaintiff's long-time efforts to advertise and promote the same and the extensive renown Plaintiff's THE BOILING CRAB® restaurants holds among the consuming public.

2.  This lawsuit arises from Defendant's unauthorized use of the confusingly similar THE BOILING SEAFOOD mark and <theboilingseafood.net> Internet domain name, the identical EAT WITH YOUR HANDS mark, and photographs depicting Plaintiff's seafood dishes copied from Plaintiff's advertising and marketing materials, in connection with a recently

COMPLAINT - 1

opened restaurant in Utica, New York that provides virtually identical restaurant services to those offered by Plaintiff.

3.      Plaintiff brings this lawsuit for trademark infringement, false advertising, unfair competition, cybersquatting and copyright infringement to permanently prevent and enjoin Defendant from causing future harm to Plaintiff's customers, reputations, and intellectual property ("IP"), and to hold Defendant accountable for its illegal action.

## PARTIES

4.      Boiling Crab Franchise Co., LLC is a limited liability company organized and existing under the laws of the State of California, with its principal place of business located in Huntington Beach, California. Plaintiff, through its authorized licensees, offers restaurant services and related products and services in commerce under the trademark THE BOILING CRAB®, which has been used by Plaintiff (itself and through its licensees and predecessor in interest) since at least as early as 2004.

5.      On information and belief, defendant The Boiling Seafood LLC is a limited liability company organized under the laws of the State of New York, with its principal place of business at 1707 Oriskany St. W., Suite 120, Utica, New York 13502.

## JURISDICTION AND VENUE

6.      This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338(a), 1338(b), and 15 U.S.C. § 1121 because it arises under the Lanham Act and the ACPA, 15 U.S.C. §§ 1051 *et seq*., as well as the Copyright Act, 17 U.S.C. § 501. Jurisdiction over the New York state law claims is also appropriate as these claims are so related to the claims brought under the Lanham Act, ACPA and/or Copyright Act that they form part of the

same case or controversy, and hence fall within the scope of this Court's supplemental

jurisdiction pursuant to 28 U.S.C. §§ 1338(b) and 1367.

7.      This Court has personal jurisdiction over Defendant because, on information and

belief, Defendant maintains its principal place of business in this District and is providing,

advertising, promoting, offering to sell and selling, goods and/or services using infringing marks

domain names and works and from this District and to consumers within this District.

8.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), (c), and (d),

because Defendant maintains its principal place of business in this District, a substantial part of

the events or omissions giving rise to Plaintiff's claims occurred in this District and because

Defendant is subject to personal jurisdiction in this District with respect to the claims in issue.

**STATEMENT OF FACTS**

***THE BOILING CRAB*® CHAIN OF RESTAURANTS**

9.      Plaintiff owns and is in the business of administering the franchising and licensing

of the intellectual property associated with THE BOILING CRAB® restaurant concept.

10.     In 2004, Plaintiff, through its predecessor in interest, opened the first THE

BOILING CRAB® restaurant in Garden Grove, California. Attached hereto as Exhibit A is a true

and correct photograph showing the exterior of the original Garden Grove location at the time it

first opened.

11.     Plaintiff has since expanded its chain to include locations throughout the United

States, including 18 locations in California, as well as locations in Dallas, Plano, and Austin,

Texas; Las Vegas, Nevada; Honolulu, Hawaii; South Miami, Florida, Washington, D.C.,

Cambridge, Massachusetts, and Richmond, Virginia. Plaintiff is also actively exploring further

expansion to additional locations.

12.    Plaintiff's THE BOILING CRAB® restaurants offer a unique selection of Cajun-influenced, Louisiana-style seafood, including blue crab, oysters, Dungeness crab, shrimp, and crawfish seasoned with Plaintiff's distinctive blends of spices and seasonings. Representative examples of the dine-in menus used at Plaintiff's restaurants over the years are attached hereto as Exhibit B.

13.    Since at least as early as 2004, Plaintiff has consistently used THE BOILING CRAB® in certain colors and configurations, including in red and blue stylized form

**THE BOILING CRAB** and as part of a logo incorporating a red crab design. Examples of exterior signage illustrating these uses (and others) are attached hereto as Exhibit C.

14.    Plaintiff is the owner the following federal registrations for its THE BOILING CRAB® trademarks (collectively, the "TBC Marks"):

| Mark | Reg. No. | Goods & Services |
|---|---|---|
| THE BOILING CRAB | 3256219[1] | Restaurant Services |
|  | 4174077[2] | Restaurant Services |
| THE BOILING CRAB | 4491054 | Restaurant Services |
|  | 5374534 | Restaurant Services |

---

[1] Registration No. 3256219 is for the phrase THE BOILING CRAB in standard characters without claim to any particular font style, size, or color. Thus, it covers use of the phrase in any font style, size or color.

[2] Registration No. 4174077 is for the depicted logo without a claim of any particular color. Thus it covers use of the logo in any color or combination of colors.

True and correct copies of the registration certificates issued by the U.S. Patent and Trademark Office for each of these registrations are attached hereto as Exhibit D.

15.    Each of Plaintiff's above referenced federal registrations was approved and registered without the U.S. Patent and Trademark Office requiring a claim or showing of secondary meaning, and has become incontestable within the meaning of Section 15 of the Lanham Act, 15 U.S.C. § 1065. Thus, each constitutes conclusive evidence that the recited marks are valid, inherently distinctive, and that Plaintiff is entitled to exclusive use of the recited marks in commerce throughout the United States for restaurant services.

16.    Plaintiff's restaurants have consistently featured bibs, cups, uniforms, t-shirts, signage and/or other collateral branded with the TBC Marks. True and correct copies of illustrative examples of Plaintiff's branded collateral, which are often incorporated into Plaintiff's advertising and social media, are attached hereto as Exhibit E.

17.    Plaintiff also owns and has long used the mark EAT WITH YOUR HANDS® (the "EWYH Mark") in connection with shirts and t-shirts since at least as early as December 2012 and restaurant services since at least as early as March 1, 2013. True and correct copies of illustrative examples of Plaintiff's use of the EWYH Mark on apparel and restaurant signage, gift cards, as well as online, are attached hereto as Exhibit F.

18.    Plaintiff owns U.S. Trademark Registration No. 8003003 for the trademark EAT WITH YOUR HANDS in standard characters for, among other things, "*Shirts; T-shirts*" in International Class 21 and "*Restaurant services*" in International Class 43. A true and correct copy of the registration certificate is attached as Exhibit G.  Plaintiff's federal registration for the EWYH Mark was approved and registered without the U.S. Patent and Trademark Office

requiring a claim or showing of secondary meaning. Thus, Plaintiff's registration constitutes prima facie evidence that Plaintiff's EWYH Mark is valid, inherently distinctive, and that Plaintiff is entitled to exclusive use of the recited marks in commerce throughout the United States for restaurant services.

19.    Plaintiff has expended considerable money, time, and effort using the TBC Marks and EWYH Mark (collectively, "Plaintiff's Marks") to promote and advertise its restaurants, further contributing to the restaurants' recognition and success.

20.    Plaintiff has also used Plaintiff's Marks extensively on the internet and, as a result, the marks have developed a strong internet presence and recognition by consumers who use the internet. Plaintiff is the registrant of the domain names <theboilingcrab.com> and <boilingcrab.com> and owns and operates a website at these domain names in order to promote and provide consumers with information concerning Plaintiff's restaurants. A true and correct copy of the home page of Plaintiff's website at www.theboilingcrab.com is attached hereto as Exhibit H.

21.    Plaintiff also uses its Plaintiff's Marks extensively on the internet through the popular social networking sites Facebook, X (formerly known as Twitter), YouTube, Instagram, and TikTok, among others. Plaintiff maintains these active social media accounts in order to further promote Plaintiff's Marks and to promote and provide information about its restaurants.

22.    Plaintiff's marks and restaurants have also received unsolicited attention from, and positive recognition by, the media, which has further contributed to consumers' widespread recognition of Plaintiff's Marks and restaurants.

23.    Through Plaintiff's extensive use, marketing, branding, and promotion, Plaintiff's Marks are recognized by the consuming public, and enjoy substantial recognition, goodwill, and

association with Plaintiff's restaurant chain. The public distinguishes Plaintiff's goods and services from those of others on the basis of Plaintiff's Marks.

24.     Plaintiff's Marks are both inherently distinctive and commercially strong in connection with restaurant services, and related goods and services.

## DEFENDANT'S WRONGFUL CONDUCT

25.     Defendant, on information and belief, was formed in October 2024, to operate a restaurant at 1707 Oriskany St. W., Suite 120, Utica, New York 13502 under names and marks that comprise or contain "The Boiling Seafood" and/or "Eat With Your Hands" (collectively, the "Infringing Marks").

26.     On information and belief, on or about November 19, 2024, Defendant began using the Infringing Marks in connection with the offer and sale of restaurant services featuring the same type of Cajun-influenced, Louisiana-style seafood offered by Plaintiff under Plaintiff's Marks, and continues to do so to the present day.

27.     Defendant often uses the Infringing Marks in colors and stylizations that are nearly identical to or closely mimic the colors and stylizations Plaintiff has long used with TBC Marks, including displaying "The Boiling" in red with the remaining term in blue, as illustrated by the photos of the exterior signage at Defendant's restaurant and an example of the signage at one of Plaintiff's restaurants:

**Plaintiff's Genuine Signage**          **Defendant's Infringing Signage**

      

28.    Defendant is also using the Infringing Marks as part of logos that incorporate a red crab design, including on menus and bibs worn by consumers who dine at Defendant's restaurant, as illustrated by the representative logo examples below.

**Plaintiff's Genuine Logo**          **Defendant's Infringing Logo**

      

29.    Defendant also uses the Infringing Marks to advertise and promote its restaurant services in multiple mediums, including via an internet website maintained by Defendant at www.theboilingseafood.com since on or about November 6, 2024. On information and belief, Defendant, or one or more individuals acting on Defendant's behalf, first registered the <theboilingseafood.com> domain name used for the website through Namecheap, Inc., a domain name registrar based in Pheonix, Arizona, on or about October 14, 2024.

30. Defendant's website at www.theboilingseafood.com also includes a "Gallery" prominently displaying several images depicting seafood dishes, as shown in the true and correct copies of the home page of Defendant's website at www.theboilingseafood.com attached hereto as Exhibit I.

31. The Gallery on Defendant's website includes a photo of oysters on the half-shell, dipping sauce and lime wedges arranged on an ice-filled tray atop a bed of seasoned seafood, corn and Cajun fries (the "Oyster Image"). The Oyster Image, however, is a modified copy of a photo that Plaintiff owns copyright in and uses to advertise and promote its restaurants (the "Original Oyster Image"), including at the bottom of the home page on Plaintiff's official website at www.theboilingcrab.com.

**Plaintiff's Original Oyster Image (from Exhibit H)**     **Defendant's Infringing Oyster Image (from Exhibit I)**

     

32. Defendant's website also features an image of Plaintiff's EWYH Mark in stylized form superimposed over two hands holding seasoned seafood. This presentation of the EWYH Mark has long been used by Plaintiff in its promotional and advertising materials, including at least as early as December 2013, when it was first featured on the landing page of Plaintiff's official website at www.theboilingcrab.com, as it appeared at the time, as shown in the true and correct printout of an archived copy of the page attached hereto as Exhibit J.

**Plaintiff's EWYH Mark
(from Exhibit J)**

**Defendant's Infringing EWYA Mark
(from Exhibit I)**





33.    The Oyster Image and EWYH Image are displayed on Defendant's website beneath a discussion of the "flavorful dishes" offered at Defendant's restaurant and above a "What Diners Are Saying" section with excerpts from alleged customer reviews of the restaurant. *See* Exhibit I. It is common in the industry for providers of restaurant services to include in their advertising and promotional materials photos showing the dishes actually offered. Indeed, prospective consumers of restaurant services often look to such photos, particularly when accompanied by written descriptions and/or customer reviews, when making choices between restaurants.

34.    Thus, viewed in the context of the page as a whole, Defendant's display of the copied images constitutes an express and/or implicit representation that the images depict genuine food items produced by Defendant and actually offered at Defendant's restaurant and, on information and belief, would be understood and construed as such by prospective purchasers. Defendant's use and display of the images is materially deceptive and misleading as it falsely suggests that the depicted seafood dishes are genuine, actual examples of the dishes produced and provided at Defendant's restaurants, when they are not.

35.    Defendant is also using the Infringing Marks and images copied from Plaintiff's marketing and advertising materials to advertise and promote Defendant's restaurant services on social media, including via a "The Boiling Seafood" account and page on the Facebook platform

that Defendant first created, on information and belief, on about October 27, 2024. Defendant

has made multiple posts to the page that promote Defendant's restaurant using an image

depicting the arms and torso of an individual scooping up seasoned seafood with their hands

while wearing a bib with Defendant's infringing logo (the "Hands Image"), as shown in the

examples attached hereto as Exhibit K.

36.    The Hands Image is a digitally altered version of an image Plaintiff a owns

copyright in and uses to advertise and promote its restaurants (the "Original Hands Image"), as

shown in the post to Plaintiff's official Facebook page on August 8, 2024 attached hereto as

Exhibit L. As used by Defendant, the Original Hands Image has been modified to insert

Defendant's infringing logo where Plaintiff's genuine logo appears in the original image, as

illustrated below:

**Plaintiff's Original Hands Image**          **Defendant's Infringing Hands Image**

          

37.    On November 25, 2024, Defendant posted the Hands Image to Defendant's

"claimed" paged promoting Defendant's restaurant on the Yelp! restaurant review platform,

accompanied by a caption that falsely states "King Crab, shrimp and crawfish with our signature

seasoning."



38.    Defendant's use of the altered Hands Image and accompanying text would be understood and construed by prospective purchasers as representations that the image depicts genuine food items produced by Defendant and actually offered at Defendant's restaurant. As such, Defendant's representations are materially deceptive and misleading as they falsely suggest that the depicted seafood dishes were produced and provided at Defendant's restaurant, when they were not.

39.    Defendant's first use of Infringing Marks in connection with Defendant's restaurant services occurred long after Plaintiff's first use and/or registration of Plaintiff's Mark in connection with restaurant services.

40.    At the time Defendant adopted and began using the Infringing Marks, registered and began using the <theboilingseafood.com> domain name (the "Infringing Domain"), and copied, altered and began using the Oyster Image and the Hands Image, Defendant knew of Plaintiff, Plaintiff's restaurants, website and domain names, as well as Plaintiff's ownership and superior rights in Plaintiff's Marks and marketing images, and knew or should have known that

the unauthorized use of Infringing Marks and copied images in connection with the advertising, promotion, offer or sale of Defendant's restaurant services constitutes a violation of Plaintiff's rights in the same.

41.     On information and belief, Defendant's adoption and use of the Infringing Marks and Infringing Domain were in bad faith and undertaken with the deliberate intent to trade on Plaintiff's goodwill, cause confusion and deception in the marketplace, and divert potential sales of Plaintiff's goods and services to the Defendant. Accordingly, Defendant's infringing conduct in adopting and using the Infringing Marks and Infringing Domain as alleged herein was intentional and willful.

42.     On information and belief, Defendant's false statements referenced herein were intentional and made by Defendant with knowledge of their falsity and with the intent to confuse or deceive the relevant consuming public regarding their truth.

43.     Defendant's use of the Infringing Marks and Infringing Domain as alleged herein is likely to cause confusion, mistake, and deception among the relevant consuming public as to the source, quality, and nature of Defendant's goods and services, and is likely to deceive the relevant consuming public into believing, mistakenly, that Defendant's restaurant services originate from, are associated or affiliated with, or otherwise authorized by Plaintiff, thereby proximately causing injury to Plaintiff and its trademark rights.

44.     On information and belief, Defendant's use of the Infringing Marks and Infringing Domain has caused, and will continue to cause, actual confusion among consumers.

45.     Defendant's acts are causing and, unless restrained, will continue to cause damage and immediate irreparable harm to Plaintiff and to its valuable reputation and goodwill with the consuming public for which Plaintiff has no adequate remedy at law.

COMPLAINT - 13

## FIRST CLAIM FOR RELIEF

### (Trademark Infringement under the Laham Act)

### 15 U.S.C. § 1114(1)

46.     Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 45, as if set forth fully herein.

47.     This claim is for trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

48.     The Infringing Marks and Infringing Domain are reproductions, copies, or colorable imitations of Plaintiff's registered TBC Marks and/or EWYH Mark.

49.     Defendant has used and is using in interstate commerce the Infringing Marks and Infringing Domain in connection with the sale, offering for sale, distribution, or advertising of restaurant services, in such a way as is likely to cause confusion, to cause mistake, and/or to deceive the consuming public.

50.     Plaintiff never consented to or authorized Defendant's adoption or commercial use of the Infringing Marks or Infringing Domain for any purpose. Defendant therefore has infringed and is infringing Plaintiff's TBC Marks and EWYH Mark in violation of Section 32(1)(a) of the Lanham Act, 15 U.S.C. § 1114(1)(a).

51.     Upon information and belief, at all times relevant to this action, including when Defendant first adopted the Infringing Marks and registered the Infringing Domain and commenced commercial use of the same in connection with restaurant services (the "Infringing Services"), Defendant knew of Plaintiff's prior adoption and widespread commercial use of the TBC Marks and EWYH Mark in connection with restaurant services and related goods and services, and knew of the valuable goodwill and reputation acquired by Plaintiff in connection

with its trademarks, and knew or should have known that that the unauthorized use of the Infringing Marks and Infringing Domain was likely to cause confusion and constitute a violation of Plaintiff's rights in the TBC Marks and the EWYH Mark. Accordingly, Defendant's infringement of Plaintiff's TBC Marks and EWYH Mark is willful and deliberate.

52.     Plaintiff has no control over the quality of Defendant's Infringing Services and, because of the source confusion engendered by Defendant's willful trademark infringement, Plaintiff's valuable goodwill in and to its TBC Marks and EWYH Mark is being significantly harmed. On information and belief, Defendant's use of the Infringing Marks and Infringing Domain, in imitation of Plaintiff's TBC Marks and the EWYH Mark, has caused, and will continue to cause, actual confusion, mistake, and deception to purchasers as to the source and origin of Defendant's Infringing Services.

53.     Defendant's activities are intended, and are likely, to lead the public to conclude, incorrectly, that the Infringing Services originate with, are sponsored by, and/or are authorized by Plaintiff, when they do not, to the damage and harm of Plaintiff and the consuming public. Thus, Defendant's activities constitute willful and deliberate infringement.

54.     Plaintiff has as no adequate remedy at law and, if Defendant's wrongful use of the Infringing Marks and Infringing Domain is not enjoined, Plaintiff will suffer irreparable harm and injury, including to its goodwill and reputation.

55.     This is an exceptional case, further entitling Plaintiff to additional remedies and also entitling Plaintiff to recover its attorneys' fees and costs incurred in prosecuting this action and stopping Defendant's willful infringement pursuant to 15 U.S.C. § 1117.

## SECOND CLAIM FOR RELIEF

### (Unfair Competition under the Lanham Act)

### 15 U.S.C. § 1125(a)(1)(A)

56.     Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 55, as if set forth fully herein.

57.     Plaintiff's Marks are nonfunctional and distinctive to both the consuming public and Plaintiff's trade.

58.     Plaintiff's Marks have, through Plaintiff's long, widespread and exclusive use and promotion, obtained extensive recognition among a substantial portion of the relevant consuming public as a strong designation used to identify and distinguish the source of Plaintiff's goods and services from those of others.

59.     Due to their identical or confusing similarity to one or more of Plaintiff's Marks, Defendant's use of the Infringing Marks and Infringing Domain is likely to cause confusion, mistake, and/or to deceive the consuming public as to the affiliation, connection, and/or association between Defendant's restaurant services and Plaintiff and Plaintiff's Marks. Thus, Defendant's unauthorized use of the Infringing Marks and Infringing Domain constitutes unfair competition and false designation of origin of Defendant's products and services in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

60.     On information and belief, at all times relevant to this action, including at the time Defendant first adopted and began using without authorization the Infringing Marks and Infringing Domain, Defendant knew of Plaintiff's prior adoption and widespread commercial use of Plaintiff's Marks, and knew of the valuable goodwill and reputation acquired by Plaintiff in

connection with Plaintiff's Marks. Thus, Defendant's unfair competition and false designation of origin is knowing, willful, and deliberate.

61.     Plaintiff has as no adequate remedy at law and, if Defendant's wrongful use of the Infringing Marks and Infringing Domain is not enjoined, Plaintiff will suffer irreparable harm and injury, including to its goodwill and reputation.

62.     This is an exceptional case, further entitling Plaintiff to additional remedies and also entitling Plaintiff to recover its attorneys' fees and costs incurred in prosecuting this action and stopping Defendant's willful cybersquatting pursuant to 15 U.S.C. § 1117.

## <u>THIRD CLAIM FOR RELIEF</u>

### (False Advertising under the Lanham Act)

### 15 U.S.C. § 1125(a)(1)(B)

63.     Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 62, as if set forth fully herein.

64.     Defendant's use of one or more photos depicting genuine seafood dishes actually offered at Plaintiff's restaurants, whether individually or in combination with statements regarding the source of the dishes, in advertising and promotional materials, including on Defendant's website and/or social media accounts, constitutes false or misleading descriptions or representations of fact in commercial advertising or promotion that misrepresents the nature, characteristics, qualities, or geographic origin of the goods, services, or commercial activities of Defendant, Plaintiff and/or others.

65.     Defendant's false or misleading descriptions or representations of fact described above have actually deceived or have the tendency to deceive a substantial segment of their audience, namely, the purchasing public for restaurant services.

66. Defendant's false or misleading descriptions or representations of fact described above are material, in that they are likely to influence purchasing decisions.

67. Defendant's conduct alleged above constitutes false advertising in violation of Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

68. On information and belief, Defendant's false or misleading descriptions or representations of fact described above have been deliberate and willful.

69. On information and belief, Plaintiff has been, or is likely to be, injured as the result of Defendant's false or misleading descriptions or representations of fact described above, either by direct diversion of sales from itself to Defendant, or by damaging the goodwill that Plaintiff's marks, goods and services enjoy with the buying public.

70. Plaintiff has as no adequate remedy at law and, if Defendant's false or misleading descriptions or representations of fact described above are not enjoined, Plaintiff will suffer irreparable harm and injury, including to its goodwill and reputation.

71. This is an exceptional case, further entitling Plaintiff to additional remedies and also entitling Plaintiff to recover its attorneys' fees and costs incurred in prosecuting this action and stopping Defendant's false advertising pursuant to 15 U.S.C. § 1117.

## FOURTH CLAIM FOR RELIEF

### (Cybersquatting)

### 15 U.S.C. § 1125(d)

72. Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 71, as if set forth fully herein.

73. The Infringing Domain is confusingly similar to Plaintiff's registered TBC Marks, which were distinctive at the time Defendant registered the Infringing Domain.

74.     Defendant registered and has used the Infringing Domain in connection with the advertising and promotion of Defendant's Infringing Services with a bad faith intent to profit from Plaintiff's TBC Marks.

75.     Defendant's activities as alleged herein violate the federal Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d)(1).

76.     On information and belief, at all times relevant to this action, including at the time Defendant first registered and began using without authorization the Infringing Domain, Defendant knew of Plaintiff's prior adoption and widespread commercial use of the TBC Marks, and knew of the valuable goodwill and reputation acquired by Plaintiff in connection with the same. Defendant's registration and/or use of the Infringing Domain is therefore knowing, willful, deliberate, and in bad faith.

77.     Accordingly, Plaintiff is entitled to recover Defendant's profits together with Plaintiff's damages, an increased monetary recovery, as well as costs of the action and reasonable attorneys' fees pursuant to Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a). Plaintiff is also entitled, at its election any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages in the amount of not less than $1,000 and not more than $100,000, as the Court considers just.

78.     Defendant's activities have caused and will continue to cause irreparable harm to Plaintiff for which Plaintiff has no adequate remedy at law. Accordingly, Plaintiff is entitled to preliminary and permanent injunctive relief.

79.     This is an exceptional case, further entitling Plaintiff to additional remedies and also entitling Plaintiff to recover its attorneys' fees and costs incurred in prosecuting this action and stopping Defendant's willful cybersquatting pursuant to 15 U.S.C. § 1117.

## FIFTH CLAIM FOR RELIEF

### (Copyright Infringement)

### 17 U.S.C. § 501

80.     Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 79, as if set forth fully herein.

81.     In 2013, Plaintiff commissioned its affiliate Boiling Crab Restaurant Group LLC ("BCRG") to create certain photographic visual works. Pursuant to this commission, employees of BCRG, acting within the scope of their employment, created the Original Oyster Image in or around August 2013, by affixing the work in a tangible medium. Because the image was created by employees of BCRG acting within the scope of their employment, BCRG was the original owner of any rights in the work, as a work made for hire under 17 U.S.C. § 101. BCRG subsequently assigned, in a written agreement, any and all copyright rights in the work to Plaintiff and, thus, Plaintiff currently owns any and all copyright rights in the image. The Original Oyster Image has been published, displayed and/or distributed as part of Plaintiff's advertising and marketing materials since at least as early as March 2019.

82.     In 2019, Plaintiff commissioned its BCRG to create certain photographic visual works. Pursuant to this commission, employees of BCRG, acting within the scope of their employment, created the Original Hands Image (together with the Original Oyster Image, the "Copyrighted Works") in or around March 2019, by affixing the work in a tangible medium. Because the image was created by employees of BCRG acting within the scope of their employment, BCRG was the original owner of any rights in the work, as a work made for hire under 17 U.S.C. § 101. BCRG subsequently assigned, in a written agreement, any and all copyright rights in the work to Plaintiff and, thus, Plaintiff currently owns any and all copyright

rights in the image. The Original Hands Image has been published, displayed and/or distributed as part of Plaintiff's advertising and marketing materials since at least as early as January 2022.

83.    The Copyrighted Works are original works containing copyrightable subject matter for which copyright protection exists under the Copyright Act, 17 U.S.C. § 101, et. seq. Plaintiff is the exclusive owner of rights under copyright in and to the Copyrighted Works.

84.    Plaintiff is the owner of valid and subsisting United States Copyright Registration No. VA 2-462-646 for the Original Oyster Image, issued by the United States Copyright Office on September 12, 2025. Attached as Exhibit M is a true and correct copy of the registration certificate for Plaintiff's Registration No. VA 2-462-646.

85.    Plaintiff is the owner of valid and subsisting United States Copyright Registration No. VA 2-463-673 for the Original Hands Image, issued by the United States Copyright Office on September 18, 2025. Attached as Exhibit N is a true and correct copy of the registration certificate for Plaintiff's Registration No. VA 2-463-673.

86.    Through Defendant's conduct alleged herein, including Defendant's reproduction, distribution, and/or public display of portions of the Copyrighted Works without Plaintiff's permission, Defendant has directly infringed Plaintiff's exclusive rights in the Copyrighted Works in violation of Section 501 of the Copyright Act, 17 U.S.C. § 501.

87.    On information and belief, Defendant's infringing conduct alleged herein was and continues to be willful and with full knowledge of Plaintiff's rights in the Copyrighted Works, and has enabled Defendant illegally to obtain profit therefrom.

88.    As a direct and proximate result of Defendant's infringing conduct alleged herein, Plaintiff has been harmed and is entitled to damages in an amount to be proven at trial. Pursuant to 17 U.S.C. § 504(b), Plaintiff is also entitled to recovery of Defendant's profits attributable to

Defendant's infringing conduct alleged herein, and an accounting of and a constructive trust with respect to such profits.

89.     As a direct and proximate result of the Defendant's infringing conduct alleged herein, Plaintiff has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. On information and belief, unless Defendant's infringing conduct is enjoined by this Court, Defendant will continue to infringe the Copyrighted Works. Plaintiff therefore is entitled to injunctive relief restraining and enjoining Defendant's ongoing infringing conduct.

## SIXTH CLAIM FOR RELIEF

### (Unfair Competition under New York Common Law)

90.     Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 89, as if set forth fully herein.

91.     Defendant's unauthorized use in commerce of the Infringing Marks as alleged herein is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Defendant's goods and services, and is likely to cause consumers to believe, contrary to fact, that Defendant's goods and services are sold, authorized, endorsed, or sponsored by Plaintiff, or that Defendants are in some way affiliated with or sponsored by Plaintiff. Defendant's conduct therefore constitutes unfair competition, use of a false designation of origin and misleading description and representation of fact in violation of New York common law.

92.     Upon information and belief, Defendant has committed the foregoing acts with full knowledge of Plaintiff's prior rights in Plaintiff's Marks and with the willful intent to cause confusion and trade on Plaintiff's goodwill.

93.    By its above conduct, Defendant has deceived and harmed the public, and inflicted irreparable injury upon Plaintiff for which it has no adequate remedy at law, unless Defendant is restrained and enjoined by this Court from further unfair competition.

## SEVENTH CLAIM FOR RELIEF

### (False Advertising Under New York Common Law)

94.    Plaintiff realleges and incorporates by reference the preceding allegations set forth in Paragraphs 1 through 93, as if fully set forth herein.

95.    Defendant's express and/or implied representations that the dishes depicted in the Infringing Works are genuine dishes actual produced and offered through the provision of Defendant's restaurant services, on to Defendant's website, social media accounts, and/or other marketing collateral, constitute false or misleading descriptions or representations of fact in commercial advertising or promotion that misrepresents the nature, characteristics, qualities, or geographic origin of the goods, services, or commercial activities of Defendant, Plaintiff and/or others.

96.    Defendant's actions constitute unfair competition and false advertising in violation of the common law of the state of New York.

97.    By its above conduct, Defendant has deceived and harmed the public, and inflicted irreparable injury upon Plaintiff for which it has no adequate remedy at law, unless Defendant is restrained and enjoined by this Court from further false and misleading advertising.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief against Defendant as follows:

1.    Entry of preliminary and permanent injunctions enjoining Defendant and its agents, servants, employees, successors, licensees and assignees, and all persons, firms, entities,

partners, or corporations in active concert or participation with Defendant, from doing, threatening, or attempting to do or causing to be done, either directly or indirectly, by any means, method or device, any of the following acts:

   (a) Directly or indirectly infringing, using, or displaying the Plaintiff's Marks or any mark confusingly similar thereto, including but not limited to the Infringing Marks, in any manner or for any purpose, including, but not limited to, in advertising, promoting, producing, distributing, selling, offering for sale, or giving away Defendant's products or services;

   (b) Using any term that is likely to be confused with Plaintiff's Marks;

   (c) Filing for or maintaining any business license, d/b/a, trademark registration or similar document using the Plaintiff's Marks or any mark confusingly similar thereto, including but not limited to the Infringing Marks;

   (d) Registering, using, or trafficking in any trade name or domain name containing or consisting of the Plaintiff's Marks or any mark confusingly similar thereto, including the Infringing Marks and the Infringing Domain;

   (e) Making any false, misleading or deceptive descriptions or representations of fact in commercial advertising or promotion regarding the nature, characteristics, qualities or geographic origin of the goods and services offered, promoted and sold by Defendant, Plaintiff or others;

   (f) Committing any other acts calculated to or that do unfairly compete with Plaintiff in any manner; and

   (g) Manufacturing, distributing, marketing, advertising, promoting, displaying, or authorizing any third party to manufacture, distribute, market, advertise, promote,

or display the Copyrighted Works and any products, works, or other materials that include, copy, are derived from, or otherwise embody the Copyrighted Works;

2.      Ordering Defendant to deliver up to Plaintiff for destruction all goods, signs, advertisements, literature, business forms, cards, labels, packages, wrappers, pamphlets, brochures, receptacles, and any other written or printed material in their possession or under their control which contain or encompass the Infringing Marks or the Infringing Works, any colorable imitations thereof; or which contain any false or misleading descriptions or representation of fact;

3.      Ordering Defendant to file with this Court and serve on Plaintiff's counsel within thirty (30) days after the Court's issuance of a judgment, a report setting forth in detail the manner and form in which Defendant has complied with Paragraphs 1-3 of Plaintiff's Prayer for Relief;

4.      Awarding compensatory damages sustained by Plaintiff and profits generated by Defendant as a result of the acts complained of herein pursuant to federal and state law, to be trebled where applicable in accordance with 15 U.S.C. § 1117;

5.      Awarding Plaintiff its attorneys' fees, costs, and disbursements incurred in this suit, in bringing this action for the legal enforcement of its trademark and copyright rights, and in connection with all efforts to stop Defendant's trademark infringement, copyright infringement, false advertising, cybersquatting and unfair competition;

6.      Awarding Plaintiff its attorneys' fees pursuant to 15 U.S.C. § 1117, and other applicable federal and state laws;

7.      Awarding Plaintiff interest, costs, and such other relief as the Court may deem just and equitable; and

8.      For all such other, further, and different relief that this Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by a jury of all issues so triable.

DATED this 20th day of November, 2025.

DAVIS WRIGHT TREMAINE LLP

By: *s/ L. Danielle Toaltoan*

L. Danielle Toaltoan
1251 Avenue of the Americas
21st Floor
New York, NY 10020
Tel. 212.603.6463
Email: danielletoaltoan@dwt.com

Steven E. Klein, (*pro hac vice forthcoming*)
560 SW 10th Avenue, Suite 700
Portland, OR 97205
Tel: 503-778-5283
Fax: 503-778-5299
E-mail: stevenklein@dwt.com

*Attorneys for Plaintiff*
*Boiling Crab Franchise Co., LLC*